### GEORGE HAISS MFG. CO., Inc., v. LINK BELT CO.

#### No. 3625.

District Court, E. D. Pennsylvania.

June 5, 1931.

See, also, 27 F.(2d) 397.

Robert M. Barr, of Philadelphia, Pa., for plaintiff.

Howson & Howson, of Philadelphia, Pa., for defendant.

### DICKINSON, J.

The master in this case was the late Cyrus N. Anderson, Esq. He well merited the very handsome tribute of respect paid to his memory by counsel who argued these exceptions at bar. In that tribute we wish to join. Indeed, we have that measure of appreciation of the painstaking care, industry and sound professional judgment of the master that if we differed with him on any conclusion he had reached, we would expect to be convinced that we were in error. None the less, we must follow the best judgment we can summon to our aid. The defendant has been convicted of a trespass upon the property rights of the plaintiff in that it has infringed the plaintiff's reissued patent No. 15,515 for a wagon loader. The defendant, to do it justice, found itself in a difficult situation. The wagon loader of the plaintiff made an appeal to users which threatened the business of defendant unless it could give to those of its customers, who insisted upon having it, a wagon loader of this type. The defendant was advised, and easily persuaded, that it had the legal right to make and sell the wagon loader of the plaintiff. At all events it did

so. It does a very large and important business, approaching $70,000,000 a year, of which the wagon loader part is a small percentage. The manufacture and sale of these wagon loaders is on the other hand the mainstay of the business of the plaintiff. The appropriation by the defendant of the plaintiff's property thus partakes of the nature of the injury done by the taker of the "ewe lamb" in the parable of the prophet. Under such circumstances the defendant could hope to escape being called to a strict account for the injury done only by proving its right to sell these wagon loaders. In this it failed and is now called upon to make compensation for the wrong done. There is no remedial branch of the law more exposed to just criticism than that with which we now have to do. Cases will readily be recalled by any Patent lawyer in which infringements which touched only one feature of the infringer's business have been followed by accounting consequences which were ruinous. Many other instances might be cited in which a successful patentee has not been able to recover from infringers an adequate return even for the expense of sustaining the validity of his patent. How unsatisfactory all attempts to find "cost" is illustrated by the attempts to find it as a basis for price fixing in the case of public utilities. An award of damages in patent infringement cases was found to be an inadequate remedy. It was deemed unjust that an infringer who had received large gains as the fruit of his trespass should be permitted to retain them. Hence the resort to the fiction that he was a trustee ex maleficio for the injured and must account for his illicit gains. The application of this doctrine has been far from satisfactory. The Science of Economics is by no means an exact science at its best and theoretical expectations are often far removed from actual results. In a manufacturing business, even when restricted to one output, the truth is profits cannot be determined or calculated with anything approaching accuracy. Many such a business has been wrecked on the rocks of a faulty system of cost sheets. Any attempt to apportion costs among a number of products is futile. The experiences of years and of many shops has helped some by suggesting certain conventional allowances in cost estimates but none of them even pretend to reflect actual costs of production and of marketing. When they do good it is by way of a guard against an underestimate of cost. When a patented thing is sold in competition with other things, patented or unpatented, it is utterly impossible, except by convention, to determine how much of what is received from its sale is attributable to the patented feature. There are many things which contribute to the sale of a product and the price at which sold. One is the genius of the maker as an inventor and as a constructor. This gives what are called the merits of the thing sold, and in one sense of the word its value. The value however which yields profit is not this kind of value, but commercial value. Few things, however good, will sell themselves. Another thing which contributes to profitable sales aside from the merits of the thing sold is the genius of salesmanship. Under modern business methods and conditions salesmanship is probably the most productive of all the things which have contributed to a profitable sale of anything. These wagon loaders formed less than two per cent. of the whole output of the defendant's plant. We venture the very confident statement that the real cost of producing them cannot be determined. The defendant made no attempt to keep the cost separated from the cost of other products. It is therefore in the position of a trustee who has mingled the business of his cestui que trustent with his own.

Although the profits, as we have said, cannot be told, there are some guides to a fair estimate of them. Some of these guides we have in the instant case. One of them is a royalty or license fee charge, which the patentee has fixed. Having fixed this himself, it is safe to accept it as fair to him. This plaintiff has not fixed any royalty charge for the right to make and sell its wagon loader, but we do have something very much like this guide. Another help is that, as the plaintiff makes only wagon loaders, we do know the cost to it of making them. It is not a rash conclusion that the defendant could manufacture as economically as the plaintiff. Another help to us is that the defendant keeps books of account of the whole business done by it and has found what its profits are. Again, it is not a rash conclusion that its profits on the wagon loaders at least equalled its average profits on all its products, and it cannot complain if its word is taken for what these profits are.

It would not be fair to find that the infringing profits were the average profits of all products, if we knew what the profits on the infringing product were, but when the infringer has so commingled its business that no separation can be made, it is not unfair to hold him to the profits on the whole. The master has found profits of $2,393.41 on the

wagon loaders. If we follow the guides spoken of as fairly reliable, this sum would be increased to at least $40,000, and might be found to reach more than $50,000. This difference is startling, and surely invites a close scrutiny of the defendant's accounting figures. The scrutiny to which counsel for the plaintiffs have subjected the accounting figures of the master has raised the profits to over $70,000; counsel for defendant reduces the profits to less than nothing. We are almost persuaded that the figuring of one or the other is wrong, and perhaps both are wrong. The question before us is whether the master is in error. There was no need to trouble ourselves with those items in the accounting which both parties have accepted. We therefore attempted to go directly to the findings, which are the subject of exceptions. No one can go far in the quest of making up cost sheets on the manufacture of these wagon loaders without being convinced that such a quest is hopeless. The utter unreliability of any estimate of cost is shown by the accounting which the defendant has submitted. This accounting would show that in the manufacture and sale of 82 wagon loaders the defendant made not a profit, but a loss of over $62,500. That is to say, that there was a loss of over $750 on each one built. That the defendant would have been guilty of a trespass upon the rights of the plaintiff in order thereby to make a profit can be believed. That it would have persisted in the infringement at a loss of $62,500 is simply incredible. There is a bluntly phrased adage to the effect that figures have a reputation for veracity, which is not shared by figurers, but without questioning the good faith in which this account was made up its result is not acceptable. The account is said to be based upon an accounting system which, during a long course of years, has been found to be fairly accurate. As a basis for stating the cost at which a product was to be billed at a "cost plus" price, we would not question that the system followed would be a protection against an underestimate. This, however, is not the kind of cost of which we are in search. The fact that the account submitted shows the result which it does show is proof positive that the cost system on which it is made up was not followed by the defendant, or, if it was, that the defendant thought it to be wrong, for otherwise the defendant would have stopped making wagon loaders at such a heavy loss. There is ample room for the finding that the defendant either does not know or does not care to disclose what the real cost was.

The master, with the patience which was characteristic of him, has attempted to state an account on the basis of the defendant's system. This is to attempt the impossible, as an attempt to reach an actual cost result. To reach any result he was forced to take the total cost of labor, overhead expenses, and the like, and apportion a certain percentage to these wagon loaders. This is a sheer assumption. We think the master was thereby misled into a finding of an unduly low estimate of profits. We say this because the master's finding of only $2,393.41 of profits does not gee with any of the very practical tests of which we have spoken. If any one attempts to revise the master's figures a different result may easily be found, but there is no assurance that any result so found is either truth or even near truth. This is because its real basis is an assumption which is no better than a guess and, one guess is as good as another. Assumptions and presumptions are all right in their own way, and sometimes we are driven to act upon them.

If facts can be found, to them presumptions must give way, but where there are no facts assumptions are our only guide. It is the part of wisdom, however, to make a choice among presumptions. If, for illustration, an account has been kept of the cost of what went into the manufacture of one of many products, the selling expenses and the sale price, we know what in fact the profit or loss was. There is no need to call upon assumptions and presumptions. If, however, the fact is not known beyond the total cost of many products, we may be driven to assume the percentage of the total sum which pertains to a particular product. For illustration, every manufacturing plant pays out for general administrative and other like expenditures a certain total sum which must be taken into account before the question of profit or loss can be determined. This is a fact and neither an assumption nor a presumption. There is such a thing as "overhead" and deterioration, but at what money sum it should be figured for any given period is wholly a matter of estimate and more or less arbitrary. Whatever it is, it is a part of the real total cost of the total output of the plant, and no one could justly reject it, and, as it cannot be known, it must be estimated. If we wish to fix the cost of one of many products, we may resort to the expedient of assuming that a certain part of all of these general expenses pertains to the one product but this is little better than a guess. Getting at the cost of a product in this manner is one way of figuring the profit or loss result. An-

other way is to figure the percentage of profit or loss on the total output, and to assume that this is the profit or loss on a particular product. This, it is true, is based upon a mere assumption and must give way to the fact of the cost of the particular product, if known. If not known, all we can do is to assume something, and the latter assumption is at least as good as the former, and certainly a trustee who, by keeping no trust account, but commingling the trust affairs with his own, so that the trust profits made cannot be known, has no right to complain if the profits of the trust business are assumed to be the profits on the commingled business. We do not hold that the total profit on a number of products measures the profit on any one of them, but if the profit on one cannot be found it may be assumed to be the profit on all.

We put our findings and conclusions in numbered form:

1. The defendant is answerable to the plaintiff for the profits made on the infringing wagon loaders.

2. The defendant kept no accounts from which the profits or loss on the infringing wagon loaders can be found, but did keep accounts from which the total profits on its total commingled products are known.

3. The master has found profits of $2,393.51 on the sale of 82 infringing wagon loaders by including in the cost of manufacture an assumed part of expenditures applicable to all of defendant's products, without proof of how much in fact did pertain to the infringing product.

4. The plaintiff has excepted as excessive to a number of the items of the cost of manufacture as allowed by the master, and the defendant has excepted to these and other allowances as inadequate.

5. We sustain the exceptions of the plaintiff so far as to increase the profit found by the master from the sum of $2,393.51 to $40,354.95 on the wagon loaders sold.

6. We dismiss the exceptions filed on behalf of the defendant.

We have reached our conclusions of the total profits being $50,709.83 on a proper account stated on the fact basis that the defendant's profits on all its output was 13.3 per cent. of the selling price, and that the wagon loaders sold for $303,405.65. To this we have added the $10,354.88 of profits on repair parts. These figures, if wrong, may be corrected on a motion for a reargument.

We have not gone through the form of reducing the allowances made by the master on particular items based upon an assumed sum applicable to the cost of these wagon loaders because it would be a mere formality. We do find the allowances made were too high, and as much too high as will increase the profits to the sum we have found the profits to be.

A decree in accordance herewith may be submitted.